IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| RANDY BEA ANDERSON,           ) | |
| ) | |
| Plaintiff,           ) | |
| ) | No. 1:14-cv-00128 |
| v.           ) | Senior Judge Haynes |
| ) | |
| f/n/u BELLUS, et al.,           ) | |
| ) | |
| Defendants.           ) | |

## MEMORANDUM

Plaintiff, Randy Bea Anderson, a state inmate at the South Central Correctional Facility ("SCCF") filed this pro se action under 42 U.S.C. § 1983 against the Defendants: Thomas Baccus, Sean Brantley, Daniel Johnson, Jeffery Bishop, Richard Burks, Rhonda Staggs, Jesse James, Christian Berry, Carmita Moon, and Rita Abels ("Defendants"). Plaintiff asserts claims for excessive force, deliberate indifference to Plaintiff's serious medical needs, retaliation, and inadequate conditions of confinement.

According to his complaint, Plaintiff alleges, in sum: (1) that Defendant Baccus closed a "pie flap" on Plaintiff's left arm during lunch service; (2) that Defendants Brantley, Johnson, Staggs, James, and Bishop denied or delayed medical treatment to his arm until nine-and-a-half hours later; (3) that Defendant Moon provided inadequate medical care that led to a cut on Plaintiff's arm becoming infected; (4) that Defendant Burks delayed follow-up medical care; (5) that Defendant Berry provided inadequate follow-up care; (6) that another time, Defendants Brantley and Burks handcuffed him in the back rather than the front; and (7) that Defendant Brantley took his walking cane and other personal property.

Before the Court is Defendants' motion for summary judgment (Docket Entry No. 61),

contending, in sum: that Plaintiff failed to exhaust his administrative remedies; that Plaintiff did not suffer from a serious medical need; that Defendants did not act with deliberate indifference towards Plaintiff's injury; that Plaintiff does not present facts to support his claim of retaliation; that the undisputed facts show that Defendant Baccus did not close a "pie flap" on Plaintiff's arm; and that Plaintiff has not presented proof of deliberate indifference to his health or safety. Plaintiff did not file a response to Defendants' motion for summary judgment.

For the reasons set forth below, the Court concludes that the undisputed facts prove Plaintiff failed to exhaust his claims except for his excessive force claim against Defendant Baccus and his claims against Defendants Brantley, Johnson, James, Staggs, Bishop, and Moon for deliberate indifference to his serious medical needs. The Court further concludes that Plaintiff failed to present proof that Defendant Baccus acted maliciously to harm Plaintiff, and that Plaintiff had an objectively serious injury. Thus, the Court concludes that Defendants' motion for summary judgment should be granted.

## A. Findings of Fact[1]

Plaintiff was confined at SCCF from July 7, 2013 until September 24, 2014. (Docket Entry No. 63, Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, at ¶ 1). Plaintiff filed two grievances regarding the allegations in his complaint during this time. Id. at ¶ 67. SCCF follows the TDOC grievance policy. Id. at ¶ 62. TDOC policy allows an inmate to file written grievances regarding any single action that SCCF staff makes toward the inmate, or any

---

[1]Defendants filed contemporaneously with their motion for summary judgment a statement of undisputed material facts (Docket Entry No. 63), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendants' statement of undisputed facts or presented any proof to dispute those facts. Accordingly, Defendants' proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(g).

condition within SCCF that personally affects the inmate. Id. An inmate must submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." Id. at ¶ 66. In order to exhaust their administrative remedies, inmates must file a grievance and appeal any adverse decision to the TDOC Commissioner's Office. Id. at ¶ 63.

Defendant Thomas Baccus was an SCCF Correctional Officer while Plaintiff was confined at SCCF. Id. at ¶ 3. At approximately 12:50 p.m. on August 28, 2014, Defendant Baccus was passing out meals to inmates in the location of the facility where Plaintiff resided. Id. When Defendant Baccus approached Plaintiff's cell to deliver a meal through Plaintiff's food port, Plaintiff threw a bag containing urine and feces at Defendant Baccus. Id. at ¶ 4. Defendant Baccus then ordered Plaintiff to clear the food port and Plaintiff complied. Id. at ¶ 5. Defendant Baccus shut the door of the food port by closing the outside lid and slider without incident. Id. No part of Plaintiff's body was caught in the food port when Defendant Baccus closed it, and Defendant Baccus did not use physical force toward Plaintiff. Id. at ¶¶ 6-7. Plaintiff did not have any injuries nor did he request medical attention. Id. at ¶ 8. SCCF investigated the incident and Plaintiff declined the opportunity to complete an "Incident Statement" that would have documented Plaintiff's account of the incident. Id. at ¶¶ 9-11. As a result of this incident, Plaintiff pled guilty to the charge of "Assault on Staff" and received fifteen days of segregation. Id. at ¶¶ 12-13.

Defendant Rita Abels was a Licensed Practical Nurse at SCCF at the time of the incident. Id. at ¶ 17. When Defendant Abels completed a Traumatic Injury Assessment and Incident Report for Defendant Baccus immediately following the incident, Defendant Abels observed that Plaintiff did not have any injuries and Plaintiff did not request medical treatment. Id. at ¶¶ 17-18. At approximately 4:00 p.m. on August 28, 2014, Defendant Abels was passing out medications to

inmates in the location of the facility where Plaintiff resided and observed that Plaintiff's cell was flooded. Id. at ¶ 19. Plaintiff called Defendant Abels names while laughing. Id. at ¶ 20. Defendant Abels ordered Plaintiff to calm down three times or she would not go near his door, and Plaintiff responded "I will get you, you just wait and see." Id. at ¶¶ 21-22. Defendant Abels did not distribute Plaintiff's medications to him at that time. Id. at ¶ 23.

Defendants James, Staggs, Brantley, Johnson, Bishop, and Burks were not healthcare professionals or medical providers for SCCF. Id. at ¶ 25. Defendant Jesse James does not recall having any personal interaction with Plaintiff around August 28, 2014. Id. at ¶ 31. Defendant Rhonda Staggs looked at Plaintiff's arm at his request and did not observe any injury that required medical attention. Id. at ¶¶ 25-26. Defendant Sean Brantley, a Sergeant at SCCF at the time of the incident, looked at Plaintiff's arm at his request and observed a scratch on the top of the forearm that did not require immediate medical attention. Id. at ¶ 27-28. Defendant Daniel Johnson, another SCCF Sergeant, observed a cut on Plaintiff's arm that was not bleeding and that he did not believe to be an injury. Id. at ¶ 28. Defendant Johnson advised the medical department of Plaintiff's cut. Id. at ¶ 29. Defendants Brantley and Johnson did not laugh at Plaintiff at any time. Id. at ¶ 30.

Defendant Jeffrey Bishop was a Senior Correctional Officer at SCCF at the time of the incident. Id. at ¶ 34. Around August 29, 2014, Plaintiff informed Defendant Bishop that he wanted medical attention for a cut. Id. Defendant Bishop observed Plaintiff's cut and did not believe that it required emergency medical attention, and the SCCF medical department authorized Defendant Bishop to bring Plaintiff to the medical department as soon as shift and security responsibilities would permit. Id. at ¶ 35.

At 11:20 p.m. on August 29, 2014, Plaintiff visited the medical department and stated that

an officer shut a pie flap on his left arm at 1:30 p.m. that day resulting in a cut that was bleeding. Id. at ¶ 36. Defendant Carmita Moon, an SCCF nurse, examined Plaintiff and determined that he had a 1.5 inch superficial laceration on his left arm. Id. at ¶ 37. Defendant Moon cleaned Plaintiff's wound with sterile saline, closed the wound with Steri-Strips, covered the Steri-Strips with a bandage, and provided Plaintiff Band-Aids. Id.

On August 31, 2014, Plaintiff filed a grievance stating that Defendant Baccus shut a pie flap on Plaintiff's left arm, that Defendants Brantley, Johnson, James, Staggs, and Bishop denied or delayed him medical care, and that Defendant Moon eventually treated him by placing three strips over the cut on his arm. Id. at ¶ 68. The Supervisor Response section of the grievance stated: "[N]o injury was observed or reported . . . during normal rounds by [Plaintiff]. Medical was advised and an examination was conducted with no treatment being needed." Id. at ¶ 69. Plaintiff appealed and the TDOC Commissioner concurred with the Supervisor Response. Id. at ¶ 70.

On September 2, 2014, Plaintiff told the nurse passing out medications that he thought his arm may be infected. Id. at ¶ 38. The nurse observed that there was "serosanguinous drainage from the cut he got on 8-29-14, yellow-green crust over wound. Slight redness and edema noted of left arm around wound." Id. The nurse noted that Plaintiff had a "possible infection" and she referred Plaintiff to a nurse practitioner. Id. Later that day, the SCCF medical department called security to escort Plaintiff to the medical department for evaluation of his arm. Id. at ¶ 39. Defendant Richard Burks, an SCCF officer, reported to Plaintiff's cell to escort him to the medical department, and Plaintiff refused to turn around to be handcuffed for his escort. Id. at ¶¶ 40-41. Defendant Burks did not escort Plaintiff to the medical department due to Plaintiff's refusal to be handcuffed. Id. at ¶ 44.

SCCF Policy provides that all inmates are handcuffed behind their backs unless they have

5

a necessary medical device such as a walking cane. Id. at ¶ 58. Plaintiff had a walking cane, but his cane had been removed as a property restriction due to Plaintiff destroying property in his cell. Id. at ¶ 56. When Plaintiff was handcuffed behind his back, he was assisted with walking by SCCF officers on each side of his body. Id. at ¶ 60.

Defendant Christian Berry was an SCCF nurse practitioner while Plaintiff was confined at SCCF. Id. at ¶ 45. On September 4, 2014, Defendant Berry examined Plaintiff in the medical department and found that his left arm had a 2 inch superficial laceration with yellow drainage that was becoming infected because Plaintiff was picking at the cut. Id. at ¶ 47. Defendant Berry informed Plaintiff that too much time had passed since the injury to stitch the cut. Id. at ¶ 46. Defendant Berry instructed Plaintiff to clean the cut twice per day, apply Neosporin, and report any redness, swelling, or pain. Id. at ¶ 48. Defendant Berry ordered two antibiotics for Plaintiff, as well as Keflex, Neosporin, Dilantin, albuterol, Alvesco, pravastatin, Zantac, and Claritin. Id. at ¶¶ 48, 52. After this treatment by Defendant Berry, Plaintiff was seen at least fifteen times before being transferred to another facility on September 23, 2014. Id. at ¶ 53.

On September 17, 2014, Plaintiff filed a grievance stating that Defendant Brantley took his walking cane and other property on August 29, 2014. Id. at ¶ 71. The Supervisor Response section of the grievance stated: "Inappropriate per policy 501.01 Section VI C-1 as it was not filed within seven (7) days of the incident." Id. at ¶ 72. Plaintiff appealed and the TDOC Deputy Commissioner concurred with the response. Id. at ¶ 73.

On September 19, 2014, Plaintiff was transported to Wayne County Medical Center. Id. at ¶ 54. On September 23, 2014, Plaintiff reported that he swallowed razor blades. Id. at ¶ 55. On September 23 and 24, SCCF personnel observed Plaintiff every fifteen minutes on average. Id.

6

Defendant Abels did not tell Plaintiff that any Dr. Coble or any medical provider would deny him medical treatment. Id. at ¶ 61.

## B. Conclusions of Law

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). The opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery, Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Where, as here, the non-moving party does not formally oppose the motion for summary judgment, a court "may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3).

A prisoner that files an action to challenge his prison conditions must exhaust all available administrative remedies established by state law. 42 U.S.C. § 1997e(a); see Jones v. Bock, 549 U.S. 199, 218-20 (2007). The PLRA "requires proper exhaustion," and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 93 (2006). "[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999). To seek dismissal, a defendant must show that the prisoner failed to exhaust his administrative remedies. Jones, 549 U.S. at 217.

7

Here, the undisputed facts reflect that SCCF followed the TDOC policy regarding inmate grievances. (Docket Entry No. 63 at ¶ 62). Under the TDOC grievance policy, inmates must file a grievance and appeal any adverse decision to the TDOC Commissioner's Office to properly exhaust their administrative remedies. Id. at ¶ 63. The policy also requires inmates to submit a grievance within "seven calendar days of the occurrence giving rise to the grievance." Id. at ¶ 66.

The Court notes that Plaintiff's complaint (Docket Entry No. 1 at 5) is verified by making his allegations under "penalty of perjury." Williams v. Browman, 981 F.2d 901, 904-05 (6th Cir. 1992). A court must consider any specific facts in a plaintiff's verified complaint. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993) ("[S]ince [the plaintiff] filed a verified complaint his allegations 'have the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment.") (quoting Williams, 981 F.2d at 905). In his complaint, Plaintiff asserts:

> [T]here is no telling how many gri[e]vances I filed on these problems and other ones that I have had since I have been at this facility and sent the ones I appealed to the commissioner Derick Scoffeld in Nashville but I never get a response back from him about any of the gri[e]vences I sent to him about all of these problems I have had since I have been at south central correctional facility[.]

(Docket Entry No. 1 at 7). Thus, while Plaintiff asserts that he has filed grievances that were not responded to, Plaintiff does not identify whether these alleged grievances related to the incidents referenced in Plaintiff's complaint or to any claims against the Defendants in this action. The record reflects that Plaintiff did not file any grievances against Defendants Abels, Berry, or Burks. (Docket Entry No. 63 at ¶ 76). The record also reflects that Plaintiff did not file any grievances regarding the following allegations: that Defendant Brantley handcuffed him in the back rather than the front; that Defendant Burks and "all other officers" and "medical staff" did not like him due to filing past civil cases against them; that he was not provided a chair in the shower; that he has not received a

8

"mandatory operation" on his right leg; and that he was left outside in a "rec cage" for over two hours that may have resulted in an asthma attack. (Docket Entry No. 72, Declaration of Leigh Staggs, at 6-24).

Based upon the undisputed facts, the Court concludes that any claims against Defendants Abels, Berry, or Burks, as well as any claims regarding handcuffing, retaliation, lack of shower accommodation, inadequate medical care to Plaintiff's right leg, or leaving Plaintiff in a "rec cage" should be denied for failure to exhaust administrative remedies. Woodford, 548 U.S. at 90, 93.

Defendants also argue that because Plaintiff's grievance filed on September 17, 2014, about his walking cane and property was deemed inappropriate, Plaintiff's failed to exhaust his administrative remedies for his claims related to that grievance. (Docket Entry No. 62 at 13-14). On September 17, 2014, Plaintiff filed a grievance that he appealed to the TDOC Commissioner's Office. (Docket Entry No. 72, Declaration of Leigh Staggs, at 17-24). Plaintiff stated that Defendant Brantley took his walking cane and other property on August 29, 2014, that some of his personal property was missing when it was returned to him on September 11, 2014, that he was being denied medical attention, and that he was being housed in cell without shelves, light, hot water, or a sprinkler. Id. at 20-21. The supervisor response reflects that Plaintiff's walking cane was confiscated to "preserve the safety and security of the facility" after Plaintiff used the cane to break the window and knock out the sprinkler inside his cell. Id. at 22. Both the grievance chairperson and the grievance committee found that Plaintiff's grievance was inappropriate because the grievance was not filed within seven days of the incident. Id. at 18-20. The warden concurred with the supervisor and grievance chairperson responses. Id. at 18. The Deputy Commissioner of Operations denied Plaintiff's appeal and concurred with the warden, stating:

> In order to meet the definition of a grievance and provide for an investigation, review, and response, a compliant [sic] must specify the manner in which the grievant was effected [sic] by an alleged incident. The complaint shall not address multiple issues and must be submitted within 7 days of an alleged incident which caused the complaint to be made.

Id. at 17.

The Court may consider a grievance properly exhausted where "prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits . . . ." Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010) (citing Vandiver v. Corr. Med. Servs., Inc., 326 F.App'x 885, 891 (6th Cir. 2009)). Yet, for this circumstance to apply, an inmate must "receive 'merits-based responses *at each step*.'" Cook v. Caruso, 531 F.App'x 554, 563 (6th Cir. 2013) (quoting Reed-Bey, 603 F.3d at 325). Here, while Plaintiff received a "merits-based" response to his complaint that Defendant Brantley took his walking cane at the first response level, Plaintiff received procedural-based responses at the remaining step of the appeals process. Plaintiff filed his grievance more with seven calendar days after Defendant Brantley took his walking cane and other property, but Plaintiff's grievance addressed multiple issues. Thus, the Court concludes that Plaintiff's claims related to his allegations that Defendant Brantley took his walking cane and other property and kept it for longer than is permitted by TDOC policy, and that he was being housed in an inadequately furnished cell should be dismissed for Plaintiff's failure to exhaust his administrative remedies. Woodford, 548 U.S. at 90, 93.

Plaintiff's excessive force claim is that Defendant Baccus closed the "pie flap" on his left arm. The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'" Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citation and internal quotation marks omitted)). An Eighth Amendment claim for excessive force has both

a subjective and an objective component. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Thus, courts considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). In the excessive force context, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "'[S]uch factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' are relevant [in determining the manner in which the force was applied]." Whitley, 475 U.S. at 321 (citation omitted).

Other relevant factors include "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." Id. "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. Thus, "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Hudson, 503 U.S. at 7.

The objective component requires that the pain be serious, Moore v. Holbrook, 2 F.3d 697, 700 (6th Cir. 1993), and it is contextual and responsive to "contemporary standards of decency," Hudson, 503 U.S. at 8 (citation and internal quotation marks omitted). In the excessive force context, regardless of any significant injury "[w]hen prison officials maliciously and sadistically use force to

11

cause harm, contemporary standards of decency always are violated. . . . Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. at 9 (citation omitted).

To be sure, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The Eighth Amendment recognizes "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (citation and internal quotation marks omitted).

Here, Plaintiff's only proof is his verified complaint that Defendant Baccus slammed the pie flap on Plaintiff's left arm "as hard as he could" and held it there "for over 5 minutes," causing a "really deep" cut. Yet, the undisputed facts show that Plaintiff threw a bag containing waste at Defendant Baccus through his food port and that Plaintiff subsequently pled guilty to the charge of "Assault on Staff." The undisputed facts further show that Plaintiff complied with Defendant Baccus's order to clear the food port, that no part of Plaintiff's body was caught in the food port when Defendant Baccus closed it, and that Plaintiff was uninjured and did not request medical treatment at that time. The undisputed facts show that Defendant Abels also witnessed Plaintiff shortly after the incident and observed that Plaintiff did not have any injuries, nor did Plaintiff request medical treatment from her.

Although these accounts of the incident appear to create a material factual dispute rendering summary judgment inappropriate, the Supreme Court has explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Based upon the undisputed facts, the Court concludes that a reasonable jury could not find that Plaintiff suffered an injury that would support an inference that Defendant Baccus used an unnecessary amount of force, or that Defendant Baccus acted maliciously and sadistically to cause harm. Thus, Plaintiff's Eighth Amendment excessive force claim against Defendant Baccus should be dismissed.

Plaintiff also asserts claims that he was denied or delayed medical care by Defendants Brantley, Johnson, James, Staggs, and Bishop, and that Defendant Moon provided him inadequate medical care that led to a cut on his arm becoming infected. Inmates have a right to medical care under the Eighth Amendment. The Supreme Court provided the following standard to determine whether this right has been violated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citation and footnotes omitted).

"The failure to address a serious medical need rises to the level of a constitutional violation where both objective and subjective requirements are met." McCarthy v. Place, 313 F. App'x 810, 813 (6th Cir. 2008) (citing Farmer, 511 U.S. at 833). The objective requirement is satisfied where a plaintiff proves that the risk of harm is objectively serious enough. Farmer, 511 U.S. at 833-34. The subjective component requires a plaintiff to prove a "sufficiently culpable state of mind," and can be satisfied by showing deliberate indifference to a serious medical need. McCarthy, 313 F. App'x

at 813-14 (quoting <u>Blackmore v. Kalamazoo Cnty.</u>, 390 F. 3d 890, 895 (6th Cir. 2004)).

Deliberate indifference is the disregard of a known risk of serious harm. <u>Id.</u> at 814 (citing <u>Farmer</u>, 511 U.S. at 837). In the context of medical treatment, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." <u>Graham ex rel. Estate of Graham v. Cnty. of Washtenaw</u>, 358 F.3d 377, 385 (6th Cir. 2004) (quoting <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Yet, even where a defendant has administered some medical treatment, deliberate indifference may be established where a plaintiff can show "grossly inadequate care" or prove that a defendant made a "decision to take an easier but less efficacious course of treatment." <u>McCarthy</u>, 313 F. App'x at 815 (citing <u>Terrance v. Northville Reg'l Psychiatric Hosp.</u>, 286 F.3d 834, 843 (6th Cir. 2002)).

Plaintiff's claims against Defendants Brantley, Johnson, James, Staggs, Bishop, and Moon for deliberate indifference to his serious medical needs arise from the alleged pie flap incident on August 29, 2014. The record reflects that the pie flap incident occurred on August 28 rather than August 29, and that Defendant Baccus did not close the pie flap on Plaintiff's left arm or injure Plaintiff. The undisputed facts show, however, that Plaintiff had a cut on his left arm some time after this incident. Thus, the Court will evaluate these Defendants' liability for their responses to Plaintiff's alleged injury.

As to the objective component, the Sixth Circuit has used a "two-part inquiry" to determine whether an injury is objectively serious enough to warrant liability under the Eighth Amendment:

> A reviewing court should first determine whether the injury is "obvious," i.e. "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." Blackmore, 390 F.3d at 897 (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.1990)) (emphasis added). If there is an obvious need for medical treatment, then the court must determine whether the delay in securing that care was reasonable. Id. at 899–900. If, however, the injury is not apparent or relatively minor, Napier v. Madison Cnty., Ky., 238 F.3d 739 (6th Cir. 2001) governs, and a plaintiff must provide "medical evidence" demonstrating that the delay in treatment resulted in additional injury.

Cain v. Irvin, 286 F.App'x 920, 927 (6th Cir. 2008).

Here, Plaintiff's verified complaint asserts that, at 12:30 p.m. on August 29, he sustained a "really deep" cut on his left arm and "lost a lot of blood" until he was escorted to the medical department at 10:00 p.m. that night. As to Defendants Brantley and Johnson, Plaintiff alleges that he was "bleeding really bad" when they came to his cell and they "smiled and laughed" before walking out. Plaintiff states that he called Defendants James and Staggs to his cell to show them how badly he was bleeding, but they did not get him any medical attention. As to Defendant Bishop, Plaintiff alleges that "it took from 6:00 pm to 10:00 pm to get [Defendant] Bishop to my door to show him just how bad I was still bleeding so he finally got me escorted to medical . . . ."

The undisputed facts show that Defendants Brantley, Johnson, James, Staggs, and Bishop were not healthcare professionals or medical providers for SCCF, and that all of these Defendants except Defendant James independently looked at Plaintiff's arm and observed that Plaintiff did not require immediate or emergency medical attention.[2] Further, the record reflects that Plaintiff's assertions regarding the severity of the cut on his left arm are exaggerated. Plaintiff's medical records reflect that Plaintiff arrived to the medical department at 11:20 p.m. on August 29 stating that he was bleeding from a cut on his left arm that he received when an officer closed a pie flap on his arm at

---

[2] The undisputed facts show that Defendant James does not recall having any personal interaction with Plaintiff around August 29, 2014.

15

1:30 p.m. that afternoon. (Docket Entry No. 63 at ¶ 36; Docket Entry No. 66 at 6). Yet, Plaintiff's medical records also reflect that Defendant Moon examined Plaintiff and found that he had a "1.5 inch superficial laceration" on his left arm, with "edges well approximated" and "no edema or discoloration on either side" of his left arm. (Docket Entry No. 63 at ¶ 37; Docket Entry No. 66 at 6).

Based on the objective findings of Defendant Moon's examination, the Court concludes that, for the period of 12:30 p.m. to 10:00 p.m., Plaintiff's 1.5 inch superficial laceration did not obviously necessitate medical attention to Defendants Brantley, Johnson, James, Staggs, and Bishop—all of whom were laypersons. See Blackmore, 390 F.3d at 897. Thus, the Court concludes that Plaintiff has not satisfied the objective component of his Eighth Amendment claim against Defendants Brantley, Johnson, James, Staggs, and Bishop for deliberate indifference to serious medical needs. The Court need not address the subjective component. See Harrell v. Grainger Cnty., Tenn. 391 F. App'x 519, 524 (6th Cir. 2010) ("Because Plaintiff has failed to satisfy the objective requirement to make out a constitutional claim for the denial of medical care, we need not reach the subjective component.").

As to Defendant Moon, Plaintiff essentially asserts that her treatment was inadequate because she "put three pieces of tape over the really deep cut on my left arm and g[a]ve me three band aids." Yet, Plaintiff's medical record reflects that Defendant Moon cleaned Plaintiff's cut with sterile saline, closed the wound with Steri-Strips, covered the Steri-Strips with a bandage, and provided Plaintiff Band-Aids. (Docket Entry No. 63 at ¶ 37; Docket Entry No. 66 at 6).

Plaintiff asserts that his "left arm got really infected" after this examination, but he does not make any further specific allegations regarding denial of medical treatment by any remaining

Defendant.[3] In any event, the undisputed facts reflect that Plaintiff received treatment for the cut on his left arm following Defendant Moon's August 29 examination. The undisputed facts reflect that Plaintiff told a nurse on September 2 that he thought his arm may be infected, and the nurse observed that there was "serosanguinous drainage from the cut he got on 8-29-14, yellow-green crust over wound. Slight redness and edema noted of left arm around wound." The nurse noted that Plaintiff had a "possible infection" and she referred Plaintiff to a nurse practitioner. Later that day, the SCCF medical department called security to escort Plaintiff to the medical department for evaluation of his arm. Officer Burks reported to Plaintiff's cell to escort him to the medical department, but Plaintiff refused to turn around to be handcuffed for his escort and thus was not escorted to the medical department. On September 4, Nurse Practitioner Berry examined Plaintiff and found that his left arm had a 2 inch superficial laceration with yellow drainage that was becoming infected because Plaintiff was picking at the cut. Berry instructed Plaintiff to clean the cut twice per day, apply Neosporin, and report any redness, swelling, or pain. Berry ordered two antibiotics for Plaintiff, as well as Keflex, Neosporin, Dilantin, albuterol, Alvesco, pravastatin, Zantac, and Claritin. After this treatment, Plaintiff was seen at least fifteen times before being transferred to another facility on September 23, 2014.

Thus, beginning at 11:20 p.m. on August 29, Plaintiff received ongoing medical attention for what was initially a 1.5 inch superficial laceration on his left arm. As stated above, "federal courts are generally reluctant to second guess medical judgments" by prison medical officials. See Graham, 358 F.3d at 385. The undisputed facts are that Defendant Moon cleaned and covered Plaintiff's

---

[3] Although Plaintiff alleges that Defendants Berry and Abels were involved in his medical care following Plaintiff's August 29 examination, as discussed infra, Plaintiff's claims against those Defendants should be dismissed for failure to exhaust his administrative remedies.

wound on August 29. Nurse Practitioner Berry instructed Plaintiff on proper wound care and ordered Plaintiff antibiotics on September 4. SCCF medical staff saw Plaintiff at least fifteen more times before his transfer on September 23rd. Based on these undisputed facts, the Court concludes that Plaintiff has not shown he received "grossly inadequate care." See McCarthy, 313 F. App'x at 815. Thus, the Court concludes that Plaintiff's claim against Defendant Moon for deliberate indifference to serious medical needs should be dismissed.

For these reasons, the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 61) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the __31st__ day of August, 2016.

_____
WILLIAM J. HAYNES, JR.
Senior United States District Judge